UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
DEVAWNE DOWLING,

             **11 CV 4954**
             **(NGG)(RML)**

      Plaintiff,


    -against-

THE CITY OF NEW YORK, ET AL,

      Defendants.
-------------------------------------------------------------------------X



## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

GERALD M. COHEN
JOSHUA P. FITCH
COHEN & FITCH LLP
Attorneys for Plaintiff
233 Broadway, Suite 1800
New York, N.Y. 10279
(212) 374-9115
gcohen@cohenfitch.com
jfitch@cohenfitch.com

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………………..………iii

PRELIMINARY STATEMENT……………………………………………………………1

FACTUAL BACKGROUND…………………………………………………………………..2

STANDARD FOR SUMMARY JUDGMENT…………………………………………...7

ARGUMENT…………………………………………………………………………………...8

    I.     DEFENDANT GASQUEZ IS NOT ENTITLED TO SUMMARY JUDGMENT FOR FALSE ARREST……………………………………………………………8

        A.     Material Issues of Fact Exist Precluding Summary Judgment on Plaintiff's False Arrest Claim…………………………………………………………..8

            i.     Accepting Plaintiff's Version of Events, There Was No Probable Cause for Plaintiff's Arrest………………………………………..9

            ii.    Defendant's Own Internal Inconsistencies Preclude Summary Judgment…………………………………………………………12

        B.     The Authority Upon Which Defendant Relies is Inapplicable to the Facts of the Case…………………………………………………………………..13

    II.    SUMMARY JUDGMENT MUST BE DENIED ON PLAINTIFF'S DENIAL OF FAIR TRIAL CLAIM………………………………………………………..18

        A.     Plaintiff Has More Than Sufficiently Established A Plausible Fair Trial Claim…………………………………………………………..............19

        B.     Plaintiff's Loss of Liberty Was A Direct Result of Defendant's False Allegations………………………………………………………………20

    III.   DEFENDANT GASQUEZ IS NOT ENTITLED TO QUALIFIED IMMUNITY……………………………………………………………………...21

CONCLUSION…………………………………………………………..………………23

## <u>TABLE OF AUTHORITIES</u>

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986)……………………………………...8

<u>Binder v. Long Island Lighting Co.</u>, 933 F.2d 187 (2nd Cir. 1991).................................................8

<u>Brady v. Town of Colchester</u>, 363 F.2d 205 (2d Cir. 1988)……………………………………8

<u>Chambers v. TRM Copy Centers Corp.</u>, 43 F.3d 29 (2nd Cir. 1994)……………………………...7

<u>Decker v. Campus</u>, 981 F.Supp. 851 (S.D.N.Y. 1997)……………………………………………..13

<u>Diodati v. City of Little Falls</u>, No. 6:04–CV–446(FJS/DEP), 2007 WL 189130 (N.D.N.Y. Jan.22, 2007)……………………………………………………………………………………………………..8, 17

<u>Funnye v. Paragon Sporting Goods Co., et al.</u>, No. 98 Civ 7731, 2001 WL 300740 (S.D.N.Y. March 27, 2001)……………………………………………………………………………………13

<u>Howard v. Schoberle</u>, 907 F. Supp. 671 (S.D.N.Y. 1995)……………………………………...7

<u>Husbands ex rel. Forde v. City of New York</u>, No. 05 Civ. 9252, 2007 WL 2454106, (S.D.N.Y. April 16, 2007)……………………………………………………………………………...14

<u>Jovanovic v. City New York</u>, 2006 WL 2411541 (S.D.N.Y. 2006)……………….......……18, 19

<u>Keller v. Sobolewski</u>, 10-CV-5198 (FB) (RML), 2012 WL 4863228 (E.D.N.Y. Oct. 12, 2012)……………………………………………………………………………………..20

<u>Krivonos v. U.S. Dept. of Justice</u>, 11-CV-2729 SLT LB, 2012 WL 4569319 (E.D.N.Y. Oct. 1, 2012)……………………………………………………………………………………..20

<u>Lee v. McCue</u>, 410 F. Supp. 2d 221 (S.D.N.Y. 2006)……………………………...8, 12, 18, 23

<u>Malley v. Briggs</u>, 475 U.S. 335, (1986)…………………….......................……………...22

<u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986)…………………..7

<u>Murphy v. Lynn,</u> 118 F.3d 938 (2nd Cir. 1997)……………………………………………..8

Parkin v. Cornell University, 78 N.Y.2d 523 (1991)……………………………...……………9

People v. Case, 42 N.Y.2d 98 (N.Y. 1977)………………………………………………………16

People v. Simon, 145 Misc.2d 518 (N.Y. Crim. Ct. N.Y. Cty. 1989)…………………………...16

Rasmussen v. City of New York, 766 F. Supp. 2d 399 (E.D.N.Y. 2011)………………14, 15, 16

Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123 (2d Cir. 1997)…………………………………18

Trapp-Miley v. City of New York, 09-CV-3933 KAM, 2012 WL 1068102 (E.D.N.Y. Jan. 17, 2012)……………………………………………………………………………………………...17

Weyant v. Okst, 101 F.3d 845 (2nd Cir. 1996)…………………………………………………8

Wu v. City of New York, 934 F.Supp. 581 (S.D.N.Y. 1996)……………………...………………9

Young v. County of Fulton, 160 F.3d 899 (2d Cir. 1998)………………………………………...2

## PRELIMINARY STATEMENT

The defendant moves for summary judgment in the hopes that this court will ignore the sharp factual disputes that not only exist between the parties, but also the internal factual disputes in his own testimony and paperwork. Specifically, immediately following the incident, defendant claimed in a sworn affidavit that plaintiff had physically prevented *him* from performing his duty while he was attempting to issue plaintiff's brother a summons for public urination. At his deposition, however, defendant gave sworn testimony that in fact it was other unknown and unidentified officers who were the ones actually attempting to issue plaintiff's brother a summons. Further, he testified that plaintiff had not actually prevented him from doing anything, but rather the reason he arrested plaintiff was because plaintiff attempted to assault him. Accordingly, it is abundantly clear from the record that defendant either lied on the sworn affidavit he forwarded to prosecutors or he lied during his deposition, thus precluding summary judgment as a matter of law.

Further, notwithstanding that these inconsistencies preclude summary judgment themselves, plaintiff disputes both of defendant's versions. Specifically, plaintiff testified that when he learned his brother was being searched by police, he calmly and unaggressively approached defendant - who was not conducting or even involved in the search - and merely asked why his brother was being searched. At no time did plaintiff behave or act in a threatening or menacing manner, nor did he make or even attempt to make physical contact with the officers. Most importantly, both plaintiff and defendant's account make one thing clear, plaintiff did not obstruct defendant from doing anything prior to his arrest. Nonetheless, defendant arrested plaintiff and he remained in custody for twenty four hours before he saw a judge who adjourned his case in contemplation of dismissal. As such, given the drastically different accounts given by

1

parties, and defendant himself, as well as the lack of any legal basis for plaintiff's arrest, summary judgment is unavailable as a matter of law.

In addition to moving directly in the face of these stark factual disputes defendant also proffers a theory of probable cause wholly unsupported under existing law - namely, that merely approaching an officer and asking a question gives rise to an arrestable offense. Similarly, defendant proffers that that act of approaching an officer, without aggression, threat or physical contact whatsoever is also sufficient to support probable cause to arrest. Neither theory, however, has any basis under the controlling law of this circuit. As such, defendant's motion must be denied.

## **FACTUAL BACKGROUND**

The parties have given sharply conflicting testimony about the events which led up to plaintiff's arrest on September 17, 2011. In fact, defendant officer Luke Gasquez has given two conflicting versions of events himself. Further his partner, police officer Marianne Gentile, also provided a material inconsistency with defendant. Accordingly each version - including both of Gasquez's versions - are recited below.

**Plaintiff's Version of Events**

On the evening of September 17, 2011, plaintiff, Devawne Dowling ("plaintiff"), and his brother, Deandre Dowling ("Deandre"), had plans to watch a sports event at their friend's house, Orlando Martinez. See Plaintiff Deposition ("Pltf Dep."), annexed to the Declaration of Gerald Cohen ("Cohen Decl."), Exhibit ("Ex.") A at 33-34; 36-37.   At approximately 10:30 p.m., plaintiff, his brother, and some of the people he was with at Mr. Martinez's house went to a liquor store in the vicinity of 96th Street and 30th Avenue. (Id. at 37, 45). Plaintiff was inside the liquor store, when his friend Andre Delahunt informed him that his brother, Deandre, was being

searched by police officers outside. (Pltf. Dep., Ex. A at 40).  Thereafter plaintiff walked out of the store and observed one officer searching his brother, but did not approach that officer. (Id. at 40). Instead, he approached defendant, who was approximately ten (10) feet away from his brother and who was not involved in the search of plaintiff's brother, wherein the following exchange took place from approximately two to three feet away:

> So I walked up to where they are, to the corner, and I asked the officer, Why are you searching my brother? And he is really aggressive. He is screaming back up, and I tell him that I am not approaching him, and he tells me to back up again. I say, Officer, I am not approaching you. Then he pushes me and instructs another officer to arrest me.

> (Id. at 40; 42; 50-52).

Despite the fact that plaintiff maintained a calm and safe distance from the officer and assured him that he was not approaching, defendant decided to arrest plaintiff for merely asking the defendant - who was not involved in the search - why his brother was being searched. (Id. at 50). Following plaintiff's arrest, Deandre was also handcuffed and taken into police custody. (Id.) In addition, Orlando Martinez, who had simply asked the officers why they were arresting plaintiff was also placed under arrest. (Id. at 48; 58). Contrary, to defendant's account, plaintiff never made or attempted to make any physical contact with defendant or any other officer. (Id. at 57).

Plaintiff was then taken to the 115th precinct where he was held in a jail cell and eventually processed. (Id. at 60; 62; 65). After plaintiff was in custody for approximately five (5) hours the criminal complaint was executed based on the sworn allegations in the supporting deposition provided by defendant Gasquez. See Plaintiff's Lodging History ("Lodging History'), Cohen Decl., Ex. G; see also Criminal Complaint ("Crim. Compl."), Cohen Decl., Ex. D; Supporting Deposition, ("Sup Dep."), Cohen Decl., Ex. E. Specifically, defendant swore that *he*

3

was *personally* attempting to write Deandre a summons and was prevented from doing so by plaintiff. (Sup Dep., Ex. E). As a direct result of that falsified supporting deposition forwarded to prosecutors by defendant, plaintiff remained in custody for at least an additional sixteen (16) hours before he saw a judge.[1] In total plaintiff was in police custody for approximately twenty-four (24) hours, before his case was adjourned in contemplation of dismissal at his arraignment. See Plaintiff's Certificate of Disposition ("Dispo"), Cohen Decl., Ex. F. Plaintiff's case was ultimately dismissed and sealed on March 6, 2012. (Id.).

**Defendant Luke Gasquez's First Version of Events**

In his first official statements concerning the incident, defendant stated that he arrested plaintiff because he "repeatedly interfered with A/O [arresting officer] while A/O attempted to issue [Deandre Dowling] a summons." See Arrest Report ("Arrest Rep."), Cohen Decl., Ex. H; see also Complaint Report ("Compl. Rep."), Cohen Decl., Ex I.  He further alleged that plaintiff "did step in *between* officer repeatedly yelling at officer and flailing his arms refusing to step back numerous times." (Id.) He not only included theses allegations on his official police reports, defendant also swore to these facts in a supporting deposition under penalty of perjury. (Sup Dep., Ex. E).

Further, defendant arrested plaintiff on the charge of Obstruction of Governmental Administration in the Second Degree ("OGA"). (Arrest Rep., Ex. H). Moreover, the allegations set forth in his police paperwork and the sworn affidavit submitted to the District Attorney's office clearly indicated that plaintiff had physically prevented *defendant* from issuing Deandre Dowling a summons. (Sup Dep., Ex. E; Arrest Rep., Ex. H; Compl. Rep., Ex I). There was no mention of other officers on the scene, nor was there any indication on the supporting affidavit

---

[1] Had the District Attorney's office declined to prosecute the case, plaintiff would have been to released immediately.

4

that other officers were actually attempting to issue a summons, even though an option on the supporting deposition form exists to indicate such a scenario. (Sup Dep., Ex. E). That was the version forwarded to prosecutors only hours after plaintiff was arrested. (Crim. Compl., Ex. D; Lodging History, Ex. G).

**<u>Defendant Luke Gasquez's Second Version Events</u>**

Notwithstanding the recitation of events provided by defendant in the sworn complaint and his police paperwork, at his deposition, defendant Gasquez completely contradicted his initial sworn statements. Specifically, defendant admitted for the first time that he was not in fact the officer attempting to issue Deandre a summons, despite his paperwork to contrary. <u>See</u> Officer Luke Gaquez's Deposition, Sept. 13, 2012 ("Gasquez Dep."), Cohen Decl., Ex. B at 42-45. In fact, he even suggested that he did not see Deandre urinating, but rather that he only saw him zipping up his pants. (<u>Id</u>. at 34). Further, he testified that the only reason he decided to stop the police van he was in was because he observed two other uniformed officers already searching Deandre on the sidewalk. (<u>Id</u>. at 40). However, defendant could not remember who these officers were, nor did he or his partner include their names, badges or precinct, in any of his records. (Gasquez Dep., Ex. B at 35-36; 53; Gentile Dep., Ex. C at 27)

Moreover, defendant testified that it was these officers - and not him - who were searching and attempting to issue Deandre a summons for public urination. (Gasquez Dep., Ex. B at 42-43). Additionally, defendant also testified that these officers were unable to issue Deandre summons, because Deandre did not have identification, however defendant admitted that he never actually *observed* these officers attempt to issue Deandre a summons and that he did not actually know whether Deandre *actually* failed to produce identification, but rather assumed that was what was happening. (<u>Id</u>. at 43-44; 51-52)("Q: Did you ever see the officers attempt to issue

him a summons? A: No ... Q: How do you know that he did not have I.D.? A: Because if he did

have I.D. I would assume they would give a ticket"). In fact, defendant's assumption proved to be

false when Deandre actually provided his identification when he was brought to the precinct

where he was actually issued a summons by defendant. (Gasquez Dep., Ex. B at 54).

Notwithstanding these contradictions in his own version of events, defendant testified that while

he was providing "back up" to these other unidentified officers, he observed plaintiff exit a store

and immediately started cursing at him. (Id. at 45). Defendant also alleged that plaintiff

attempted to walk past him and physically assault him with a "shoulder-type block, check" after

defendant ordered plaintiff to get back. (Id. at 46-47). In fact, defendant claimed he had to move

out of the way to avoid getting hit by plaintiff. (Id. at 49). It was at this point and at no point

prior that defendant made the decision that probable cause existed to arrest plaintiff for his

aggressive behavior:

> Q: Would that be because he attempted to make physical
> contact with you?
> A: Initially, it was just general fear due to the fact that we
> were surrounded by a group. Once he attempted to make
> physical contact with me, then that becomes more of a -- at
> that point, it's a physically threatening gesture. It's more
> than cursing, at that point. He's trying to swipe at me to
> check me.
> Q: Up until that particular act of trying to make contact, the
> cursing did not constitute a crime?
> A: No.

(Id. at 59-60). As such, unlike defendant's initial sworn statements in the criminal

complaint, according to his deposition testimony his decision to arrest plaintiff was because of

this physical confrontation, and not because he was obstructed from issuing a summons, which

was not being issued at the scene in the first place. (Id. at 51)("Q: Did you ever see the officers

attempt to issue him a summons? A: No").

6

**Defendant's Partner Conflicting Account**

Police Officer Marianne Gentile was defendant, Luke Gasquez's, partner on September 17, 2011, as she had several times before. See Officer Marianne's Gentile's Deposition, Sept. 13, 2012 ("Gentile Dep."), Cohen Decl., Ex. C at 21. While deviating entirely from defendant's original version of events, her version, for the most part, is consistent with defendant's second account, except in one significant aspect. Contrary to defendant, Officer Gentile never claimed that plaintiff approached defendant or attempted to make physical contact with him whatsoever, as was defendant's central allegation. (Id. at 35-37). In fact, PO Gentile was very clear that plaintiff did not get any closer than three (3) feet away from either her or defendant, and the only behavior giving rise to probable cause for plaintiff's arrest was him flailing his arms and cursing. (Id.) (("Q: How far away from you was he? A: He was three feet in front of Gasquez ... Q: What exactly was Devawne Dowling doing, other than waving his arms and cursing? A: That's pretty much it.").

## STANDARD FOR SUMMARY JUDGMENT

"On summary judgment the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper." Howard v. Schoberle, 907 F. Supp. 671, 677 (S.D.N.Y. 1995)(citing Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2nd Cir. 1994)). In deciding a summary judgment motion, "[t]he District Court is not to weigh evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party and to eschew

credibility assessments." <u>Weyant v. Okst</u>, 101 F.3d 845, 854 (2nd Cir. 1996). "[A]ll doubts as to the existence of a genuine issue for trial should be resolved against the moving party." <u>Brady v. Town of Colchester</u>, 363 F.2d 205, 210 (2d Cir. 1988) (<u>citing</u> <u>Binder v. Long Island Lighting Co.</u>, 933 F.2d 187, 191 (2nd Cir. 1991)).  Summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

## **ARGUMENT**

## I.    DEFENDANT GASQUEZ IS NOT ENTITLED TO SUMMARY JUDGMENT FOR FALSE ARREST

### A. **Material Issues of Fact Exist Precluding Summary Judgment on Plaintiff's False Arrest Claim**

It is well-settled that "[w]here the question of whether an arresting officer had probable cause is predominantly factual in nature, as where there is a dispute as to the pertinent events, the existence <u>vel</u> <u>non</u> of probable cause is to be decided by the jury." <u>Murphy v. Lynn</u>, 118 F.3d 938, 947 (2nd Cir. 1997); <u>accord</u> <u>Weyant v. Okst</u>, 101 F.3d 845, 854 (2nd Cir. 1996) ("The weighing of the evidence and the determination as to which version of the events to accept are matters for the jury."); <u>see</u> <u>also</u> <u>Diodati v. City of Little Falls</u>, No. 6:04–CV–446(FJS/DEP), 2007 WL 189130, at *3 (N.D.N.Y. Jan.22, 2007) (summary judgment precluded where grandmother denied interfering with arrest of grandson, in contrast to police's contention that she was disorderly and ignored request to return to her vehicle: "[T]he reasonableness of their beliefs regarding probable cause for Plaintiff's arrest depends upon whether the Court credits Plaintiff's or Defendants' version of sharply disputed facts."); <u>Lee v. McCue</u>, 410 F.Supp.2d 221, 223, 225–26 (S.D.N.Y.2006) (denying summary judgment on OGA false arrest charge where there was an issue of fact as to whether plaintiff interfered with officer's questioning of a witness and

"bumped" officer with his body); <u>Wu v. City of New York</u>, 934 F.Supp. 581, 588 (S.D.N.Y. 1996) ("Where the defense of probable cause is based on conflicting evidence, the question is resolved by the jury."); <u>Parkin v. Cornell University</u>, 78 N.Y.2d 523, 529 (1991) (probable cause can be decided by the court "only where there is no real dispute as to the facts or the proper inferences to be drawn from such facts.").

   i.  **<u>Accepting Plaintiff's Version of Events, There Was No Probable Cause for Plaintiff's Arrest</u>**

  Accepting plaintiff's account, as this court must for purposes of this motion, no officer could have reasonably believed that there was probable cause to arrest plaintiff for simply asking an officer a question. When plaintiff was arrested, he was charged with Obstructing Governmental Administration in the Second Degree which states in pertinent part:

> A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant  from  performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act
> ...
> N.Y. Pen. § 195.05; (Crim. Compl., Ex. D).

  The crux of defendant's motion is that plaintiff had somehow interfered with his "official function," during their interaction on September 17, 2011.  However, according to plaintiff he did not obstruct or prevent defendant or any officer from performing their duties. (Pltf. Dep., Ex. A at 57; 70). Additionally,  because of defendant's own conflicting sworn testimony and the testimony of his partner, it is unclear what "official function" plaintiff had attempted to prevent defendant from performing.  Specifically, according to the criminal complaint and his sworn supporting deposition, plaintiff had placed himself between defendant and his brother Deandre, yelled, flailed his arms, and *prevented defendant from issuing Deandre a summons*. (Crim.

Compl., Ex. D; Sup Dep., Ex. E) (emphasis added). At his deposition, however, defendant's story drastically changed from this initial account and defendant admitted he was not even the officer attempting to issue Deandre a summons. (Gasquez Dep., Ex. B at 41)("Q: Were you involved in that search? A: No"). In fact, defendant also admitted that he never actually saw anyone attempt to issue Deandre a summons, but simply assumed that this was happening. (Id. at 51)("Q: Did you ever see the officers attempt to issue him a summons? A: No"). Rather, according to defendant's new version, his role was providing "back up" to other officers from ten (10) feet away while they searched plaintiff's brother. (Gasquez Dep., Ex. B at 45-47; Pltf. Dep., Ex. A at 50). Additionally, as distinguished from is first sworn version, plaintiff did not get in between defendant and Deandre and did not prevent him from writing a summons, but rather plaintiff approached and attempted to "shoulder-type block, check" him after defendant instructed him to get back. (Gasquez Dep., Ex. B at 46-47; Sup Dep., Ex. E). Notwithstanding these drastic inconsistencies defendant's motion seems to simply ignores the first version and adopt his second sworn account, in which he suggests that the "official function" plaintiff had allegedly interfered with was defendant's directive to "step back." (Gasquez Dep., Ex. B at 45-47). Further, completely absent from his brief is defendant's allegation that plaintiff attempted to physically assault him, which at his deposition defendant testified was the main impetus for placing plaintiff under arrest. (Id. at 59-60).

Despite defendant's refusal to acknowledge these differing accounts, or any account consistent with the criminal complaint, plaintiff's account disputes all of defendant's versions.

> A: So I walked up to where they are, to the corner, and I asked the officer, Why are you searching my brother? And he is really aggressive. He is screaming back up, and I tell him that I am not approaching him, and he tells me to back up again. I say, Officer, I am not approaching you. Then he pushes me and instructs another officer to arrest me.

(Pltf. Dep., Ex. A at 40).

Consequently, even assuming arguendo that defendant's newest theory of probable cause was actually the reason plaintiff was arrested, plaintiff's version clearly indicates he was *not* approaching defendant and he was fully compliant with defendant's directive. (Id.) In fact, while he was standing still he specifically informed the officer that he was not approaching. (Pltf. Dep., Ex. A at 40). Moreover, plaintiff absolutely denies any allegation that he attempted to make physical contact with the defendant. (Id. at 57). To the contrary, plaintiff remained a safe distance away from defendant, who was simply standing there not performing any function at all and certainly was not "attempting" to issue plaintiff's brother a summons.[2] (Id. at 52). Defendant was not in the act of performing any "official function." Further, plaintiff's account of what occurred does not even remotely suggest that he was interfering with the defendant's performance of his duties, if any. Additionally, defendant's desperate attempt to manipulate plaintiff's testimony to somehow suggest that he was disobeying the officers order to step back, cannot transform the *plain language* of plaintiff's account which clearly indicates he was fully compliant and attempting assure the officer that he was not a threat. Accordingly, given that the central dispute as *now* claimed by the officer - namely whether plaintiff attempted to physically assault him with a body check - must be resolved in plaintiff's favor.

> According to plaintiff, he did not bump officer Manganiello, verbally interfere with Mann's questioning, or resist being handcuffed or arrested. If we accept plaintiff's version of events (and I have no choice in the matter), then Lee did nothing to provoke his arrest and the officers had neither probable cause nor arguable probable cause to arrest him.

---

[2] Defendant claims that plaintiff's brother was not issued a summons by the other officer because he did not have identification. (Gasquez Dep., Ex. B at 43-44; 51-52)("Q: Did you ever see the officers attempt to issue him a summons? A: No ... Q: How do you know that he did not have I.D.? A: Because if he did have I.D. I would assume they would give a ticket"). However, defendant obtained Deandre's identification at the precinct and issued him a summons. (Id. at 54).

<u>Lee v. McCue</u>, 410 F. Supp. 2d 221, 226 (S.D.N.Y. 2006). As such, summary judgment must be precluded as a matter of law and defendant's must be denied.

### i.   Defendant's Own Internal Inconsistencies Preclude Summary Judgment

As discussed *supra*, defendant's sworn statement to prosecutors shortly after the incident was drastically different from the sworn testimony at his deposition. In his supporting deposition defendant swears to the following facts:

> While *I* was attempting to issue summons [to] another individual []
> I observed the defendant intentionally place himself between
> [myself] and [Deandre Dowling] yell and flail arms @ officer
> repeatedly

(Sup Dep., Ex. E). Further, it is especially noteworthy that defendant swore in his affidavit that plaintiff was preventing from issuing a summons, because the supporting deposition form also has an option for defendant to have indicated that he observed plaintiff preventing *another* officer from issuing a summons. (<u>Id</u>.). However, when given that option, defendant unequivocally indicated that *he* - and no one else - was the officer attempting to issue the summons. This was a complete contradiction from defendant' sworn deposition testimony, where he testified that plaintiff refused to step back and physically threatened defendant while he was providing "back up" to *fellow* officers, who were attempting to issue plaintiff's brother a summons. (Gasquez Dep., Ex. B at 42-44). As such, this glaring material dispute in his own testimony is sufficient to defeat summary judgment in this case.

Moreover, defendant's own partner, Officer Gentile, provides yet another account of what occurred in conflict with plaintiff's version and both of defendant's versions. Officer Gentile testified that plaintiff remained three (3) feet away from both her and defendant Gasquez during their *entire* interaction. (Gentile Dep., Ex. C at 35)("Q: How far away from you was he? A: He was three feet in front of Gasquez."). She further contradicted defendant when she stated that

plaintiff did not even *attempt* to make *any* physical contact with defendant. (Id. at 35-37)("Q: What exactly was Devawne Dowling doing, other than waving his arms and cursing? A: That's pretty much it."). These inconsistencies along with plaintiff and defendant's own irreconcilable account clearly raise material factual disputes that preclude summary judgment in this case. A similar point was highlighted in Funnye v. Paragon Sporting Goods Co., et al., No. 98 Civ. 7731, 2001 WL 300740, * 1 (S.D.N.Y. March 27, 2001) (Koetl, J),

> "[t]he flaw in the City defendants' argument, however, is that it requires the Court to accept the accounts of the events on the day in question as given by defendants Terzian and Wilenski. But those accounts are disputed by the plaintiff *and contain various internal conflicts*."

Id. at *5 (denying summary judgment due to issues of fact) (emphasis added).

## B. The Authority Upon Which Defendant Relies is Inapplicable to the Facts of the Case

Defendant's motion attempts to draw false analogies with several circuit precedents, however, in every instance their reliance is misplaced. Specifically, all of the cases cited by defendants involve plaintiffs who admittedly refused to follow the police officers directives in *emergency* and/or *dangerous* situations and had some component of *physical* inference with the officers *actually involved* in the "lawful duty." For instance, in Decker v. Campus, 981 F.Supp. 851 (S.D.N.Y. 1997) the plaintiff admitted to having *physically* interfered with an officer in a high-risk rescue operation of his wife, namely he

> physically broke away from the sheriff, who had been called to assist in a rescue attempt. Additionally, plaintiff admits that he approached a rescue worker, touched his arm, and asked him questions, while the worker was trying to save Mrs. Decker's life. In so doing, plaintiff obstructed the duties of two government officials and risked delaying the rescue of his wife.

> See id. at 858.

Similarly, in <u>Husbands ex rel. Forde v. City of New York</u>, No. 05 Civ. 9252, 2007 WL 2454106, (S.D.N.Y. April 16, 2007) plaintiff admitted to ignoring police directives to step back and stop speaking to her brother while the officers issuing the directives were *engaged* a struggle with her brother, who they believed had just fired shots at them. <u>See</u> <u>id</u>. at *13. In <u>Husbands</u>, the court noted that "the actions of the officers must be considered in context" and probable cause must be analyzed under the totality of the circumstances. <u>Id</u>. Given plaintiff's version in that case, the court reasoned:

> Here, several police officers were surrounding Darryl Forde, who was lying face down on the ground. Officer Livingston was struggling with Darryl Forde, and there was a concern that Darryl Forde was attempting to reach for a gun. *In that situation*, the officers needed to be entirely focused on the effectuation of his arrest; it follows that any disturbance of the officers-by attempting to speak to Darryl Forde, and by taking a step toward the officers-may be viewed as sufficient interference.

<u>Id</u>. (emphasis added). Accordingly, defendant's attempt to broadly apply the narrow holding in <u>Husbands</u> to the facts of this case is completely misplaced.

Finally, defendant cites <u>Rasmussen v. City of New York</u>, 766 F. Supp. 2d 399, 403 (E.D.N.Y. 2011) where the court noted that "there is no dispute, even under Rasmussen's version of the facts, that she *deliberately* and *physically* interfered with a police operation because she considered the amount of force used to be excessive." (emphasis added). Notwithstanding the dicta in that case - discussed *infra* - this case is completely inapplicable to the facts herein.

Specifically, in the instant matter, none of the conditions in cases cited by defendant were present. By all accounts plaintiff's brother was simply being searched after he had allegedly been observed urinating in public, which clearly posed no harm or threat to anyone as he had already "zipped up." (Gasquez Dep., Ex. B at 34). More importantly, according to P.O. Gasquez, he was not even involved, in any way whatsoever with the search or arrest of plaintiff's brother, but

rather he was standing a full ten (10) feet away while these *unidentified* mystery officers performed those same acts and had no problem handcuffing and searching Deandre at all. (Gasquez Dep., Ex. B at 41)("Q: Were you involved in that search? A: No"); (Pltf. Dep., Ex. A at 50)("Q: How far was your brother away from you? A: Probably, about, approximately, like ten feet.").

Furthermore, plaintiff's testimony along with officers Gentile's clearly indicates that he was not approaching the defendant, was standing a safe distance away, making no attempt at physical contact, and complying with the officer's directives. (Pltf. Dep., Ex. A at 40; Gentile Dep., Ex. C at 35). Notwithstanding, defendant asserts through a distorted representation of plaintiff's testimony, that since plaintiff merely stopped - approximately two to three feet away from defendant - when defendant ordered him to step back, rather than affirmatively backing up, that somehow provided probable cause for plaintiff's arrest. See Defendants Memorandum of Law ("Def. Mem.") at 13-14. Further, defendant attempts to bolster this argument with dicta from Rasmussen that "merely approaching the police, or speaking during the course of a police action, or disregarding police instructions, will support a conviction for OGA." Rasmussen v. City of New York, 766 F. Supp. 2d 399, 403 (E.D.N.Y. 2011). However, as noted *supra*, taking this quote out of context ignores the particular facts of Rasmussen, wherein the plaintiff admittedly physically interfered with the officers actually involved in her brothers arrest. See id. In this respect defendant's citation to Rasmussen to bolster this point is illustrative of defendant's refusal to acknowledge the crucial distinction between this matter and all the cases cited by defendant - namely they all involve plaintiffs who *admittedly* either physically interfered with a lawful police action or continued to approach and disregard orders from officers who were *personally engaged* in a *dangerous* incident. Conversely, in the instant matter, neither of those

scenarios are present. Further, defendant's reliance on <u>Rasmussen</u>'s dicta to suggest that plaintiff's mere *inquiry* about the reason that other officers were searching his brother was somehow a violation is also without merit. <u>See</u> <u>People v. Case</u>, 42 N.Y.2d 98, 102 (N.Y. 1977) ("the statute has been uniformly interpreted to the effect that *mere words alone* do not constitute 'physical force or interference' such as to support the charge of obstructing governmental administration")(citations omitted)(emphasis added); <u>see also</u> <u>People v. Simon</u>, 145 Misc.2d 518, 521 (N.Y. Crim. Ct. N.Y. Cty. 1989)("It is well established that mere words alone do not establish 'physical force or interference' necessary to support the charge of obstructing governmental administration").

It this case, accepting plaintiff's version, his behavior could not possibly as give rise to probable cause for any crime, let alone OGA, especially under the circumstances he describes and must be accepted by this court. First of all, despite defendant's initial sworn statements, his deposition testimony suggests that he was not even engaged in issuing the summons, nor was he prevented from doing so by plaintiff. (Gasquez Dep., Ex. B at 41)("Q: Were you involved in that search? A: No"). Second, the parties were more than ten (10) feet away from the interaction between these other police officers and Deandre, and more importantly there is no indication from *any* party that plaintiff was interfering with *their* actions. (Pltf. Dep., Ex. A at 50)("Q:How far was your brother away from you? A: Probably, about, approximately, like ten feet."). Finally, plaintiff remained a safe distance from the defendant, and assured him that he was not approaching - a fact confirmed by defendant's own partner. (<u>Id</u>. at 40; Gentile Dep., Ex. C at 35). Without more, those circumstances would not and could not lead a reasonable officer to believe there was probable cause to arrest, which is illustrated by the fact that in both the criminal complaint and defendant's deposition, he describes some kind of physical contact as well.

16

(Gasquez Dep., Ex. B at 59-60; Crim. Compl., Ex. D; Sup Dep., Ex. E). Accordingly, these circumstances, at minimum raise an issue of fact as to whether there was probable cause to arrest, thus defeating defendant's motion. See Trapp-Miley v. City of New York, 09-CV-3933 KAM, 2012 WL 1068102 (E.D.N.Y. Jan. 17, 2012) ("Even assuming that there was the requisite proof of physical interference or that verbal interference would suffice, a rational fact-finder could nevertheless find that defendants lacked probable cause to arrest plaintiff.").

Based on the forgoing it is clear that this entire case turns on credibility, which cannot not be determined at the summary judgment stage. Either a jury will believe one of the two stories offered by defendant Gasquez regarding the events leading up to plaintiff's arrest or they will credit plaintiff's version in which he committed no crime or violation of law. Specifically, they will credit that either plaintiff "body checked" the officer when he was providing back up or that plaintiff got in between the defendant and his brother when defendant was attempting to issue a summons, or they will reject both versions. In either instance these material issues of fact must be decided by a jury and therefore defendant's motion must fail. See Trapp-Miley v. City of New York, Slip Copy, 2012 WL 1068102, *7 (E.D.N.Y.,2012) (denying summary on OGA because plaintiff "contends that she did not raise her voice … and that defendants never directed her to stop speaking with Wright" thereby raising a genuine issue of fact with defendants who claim the contrary); see also Diodati v. City of Little Falls, No. 6:04–CV–446(FJS/DEP), 2007 WL 189130, at *3 (N.D.N.Y. Jan.22, 2007) (summary judgment precluded where grandmother denied interfering with arrest of grandson, in contrast to police's contention that she was disorderly and ignored request to return to her vehicle: "[T]he reasonableness of their beliefs regarding probable cause for Plaintiff's arrest depends upon whether the Court credits Plaintiff's or Defendants' version of sharply disputed facts."). Lee v. McCue, 410 F.Supp2d 221 (S.D.N.Y.

17

2006) (denying summary judgment on OGA false arrest charge where there was an issue of fact as to whether plaintiff interfered with officer's questioning of a witness and "bumped" officer with his body).

## II.   SUMMARY JUDGMENT MUST BE DENIED ON PLAINTIFF'S DENIAL OF FAIR TRIAL CLAIM

In order to prove a fair trial claim plaintiff needs to show that an officer: 1) knowingly forward false information to prosecutors; 2) the information forwarded is the type of information that would be likely to influence a jury's decision *if* the case proceeded to trial; and, 3) the person suffers a deprivation of liberty as a result.  See Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123,130 (2d Cir. 1997)("When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983."); see also Jovanovic v. City New York, 2006 WL 2411541, *13 (S.D.N.Y. 2006)("A claim for denial of a fair trial based on fabrication of evidence or false testimony arises if a police officer creates false information likely to influence a jury's decision and then forwards that information to prosecutors").

In the present case the evidence adduced during discovery has already all but satisfied plaintiff's burden on this claim. As noted supra, defendant has already admitted that he forwarded false information to the District Attorney's office. Specifically, in his sworn filings with the prosecutor, defendant claims that plaintiff prevented *him* from issuing Deandre Dowling a summons by getting *between* them. (Crim. Compl., Ex. D; Sup Dep., Ex. E). Defendant's testimony at his deposition, however, was that he was not even *involved* in the issuance of a summons to Deandre at the scene, nor his handcuffing, and that plaintiff did not get in between them, but rather plaintiff was arrested because he body checked the defendant after he was

18

ordered to step back. (Gasquez Dep., Ex. B at 59-60). Thus, if defendant's deposition testimony is believed then it logically follows that the statements made to the District Attorney's at the time of plaintiff's arrest were false. Further, these false statements alone would be sufficient to succeed on this claim even if a jury believed that probable cause existed for plaintiff's arrest based on defendant second account at his deposition because "probable cause to arrest is not a defense" to a fair trial claim. See Jovanovic v. City of New York, 486 F. App'x 149, 152 (2d Cir. 2012). At minimum, these glaring contradictions raise an issue of fact as to whether his statements to prosecutors regarding the central allegations against plaintiff were false.

### A.  Plaintiff Has More Than Sufficiently Established A Plausible Fair Trial Claim

Defendant's motion appears to argue that the plaintiff has failed to properly plead a claim for a denial to a right fair trial. Defendant claims that plaintiff's complaint is nothing more than a "formalaic recitation of the elements of the cause of action" without specifying the specific acts that give rise to this claim. (Def. Mem. at 16). In fact defendant cites some of the general allegations in plaintiff's complaint in his motion, but completely ignores the specific allegation that forms the basis of this claim:

> Specifically, defendants falsely and knowingly alleged that plaintiff interfered with defendant officers while defendant officers were issuing a summons to another individual.

> See Plaintiffs Complaint (Pltf. Compl.), Cohen Decl., Ex. J at ¶ 20.

As such, plaintiff's complaint not only states that defendant forwarded false evidence to the District Attorney's office, but it also specifically identifies the substance of defendant's false allegations about plaintiff. Notwithstanding the sufficiency of the pleadings, defendant's motion ignores the fact that it is one for summary judgment in which the court is not restricted to the four corners of the document, but instead can consider evidence produced during discovery submitted in connection with the brief. See Krivonos v. U.S. Dept. of Justice, 11-CV-2729 SLT

LB, 2012 WL 4569319 *8 (E.D.N.Y. Oct. 1, 2012)(on summary judgment the court may consider "materials outside the four corners of the complaint" under Rule 56). Further, the fact that there is evidence beyond the pleadings in this case is of particular import given the fact that the falsity alleged in the complaint was confirmed when defendant admitted at his deposition that he was never involved in the issuance of summons or the handcuffing of plaintiff's brother and that plaintiff never got in between them but rather bumped the officer while he was providing back up to other officers involved with plaintiff's brother. (Gasquez Dep., Ex. B at 41-45; 51-52; 59-60). Accordingly, since plaintiff's deposition testimony, raises an issue as to the veracity of his initial statements to the District Attorney there is more than sufficient evidence establish plausible fair trial claim.

### B. <u>Plaintiff's Loss of Liberty Was A Direct Result of Defendant's False Allegations</u>

Finally, defendants allege that since plaintiff disposed of this matter with an adjournment in contemplation of dismissal ("ACD") at arraignment, he is not entitled to have a fair trial claim. (<u>See</u> Def. Mem. at 16). However, the Honorable Judge Federic Block recently decided this issue against the City defendants, when he held that an ACD does not preclude a fair trial claim.

> while the defendants assert that plaintiff's acceptance of the ACD "negates" any harm that he may have suffered from Officer Sobolewski's fabrication of false evidence, this argument fails to acknowledge that the harm suffered by an individual bringing a deprivation of the right to a fair trial claim is the "deprivation of liberty" that occurs "because of the fabrication"

<u>See</u> <u>Keller v. Sobolewski</u>, 10-CV-5198 (FB) (RML), 2012 WL 4863228 (E.D.N.Y. Oct. 12, 2012). Further in <u>Keller</u>, the court specifically noted that "because of Officer Sobolewski's wrongful actions, [plaintiff] spent thirty-five hours in jail" indicating that the deprivation of liberty included plaintiff's incarceration while he was awaiting arraignment, thus defeating defendant's theory on this issue.

In addition to Judge Block's analysis, the record in this case also supports the fact that plaintiff was deprived of his liberty as a direct result of defendant's false allegations. Specifically, according to his lodging history, plaintiff was in custody for an additional *sixteen (16)* hours *after* the District Attorney's office received defendant's false supporting deposition stating that plaintiff prevented him from issuing Deandre a summons. (Lodging History, Ex. G). A fortiari, had defendant simply told the truth about what occurred at that time - namely, that he was not the officer attempting to issue a summons and plaintiff never interfered or prevented the officer from doing anything - the District Attorney's office would likely have declined to prosecute the case and plaintiff would have been released immediately as opposed to sixteen hours later after he saw a judge. As such, plaintiff's deprivation of liberty was directly causally linked to these allegations and defendant's motion must be denied.[3] Accordingly, defendant's argument is simply invented from whole clothe and unsupported by the facts or law.

## III.    DEFENDANT GASQUEZ IS NOT ENTITLED TO QUALIFIED IMMUNITY

It is well established that "[g]overnment officials enjoy qualified immunity when they perform discretionary functions if either (1) their conduct did not violate clearly established rights of which a reasonable person would have known, or (2) it was objectively reasonable to believe that [their] acts did not violate these clearly established rights." Young v. County of Fulton, 160 F.3d 899, 903 (2d Cir. 1998) (internal citations omitted). An officer is entitled to qualified immunity under the "objectively reasonable" standard if "officers of *reasonable competence* could disagree on the legality of the defendants' conduct." Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1095 (1986) (emphasis added). In other words, sufficient

---

[3] It is of no moment that the deprivation occurred before arraignment and defendant cites absolutely no authority to support the proposition that the deprivation of liberty must occur post arraignment, but rather makes sweeping conclusory assertions unsupported by the facts or law.

protection is provided to "all but the plainly incompetent or those who knowingly violate the law." Id.

Here, defendant Gasquez does not satisfy the "objectively reasonable" standard because at minimum there is credible evidence that he knowingly violated the law, namely that he lied and continues to lie about plaintiff's actions under penalty of perjury. Specifically, at his deposition defendant admitted that much, if not all, of the information contained in his prior *sworn* affidavit - namely, that plaintiff had gotten in between defendant and Deandre and prevented defendant from issuing Deandre a summons - was not true. (Gasquez Dep., Ex. B at 41-45; 51-52; 59-60). Instead of plaintiff preventing defendant from issuing Deandre a summons, defendant testified that he actually arrested plaintiff because plaintiff had attempted to assault him. (Id. at 59-60). Moreover, even that version was called into question when defendant's own partner stated unequivocally that plaintiff *never* attempted to assault defendant. (Gentile Dep., Ex. C at 35-37). Notwithstanding all of the inconsistencies in defendant's own versions, plaintiff's version of events clearly indicates that he remained three feet away from defendant and merely asked defendant why other officers, who were standing ten feet away were searching his brother. (Pltf. Dep., Ex. A at 40, 50-52). Accepting, plaintiff's version - as this court must - no reasonable officer would believe that there was probable cause arguable or otherwise to arrest plaintiff simply asking a question. Further if defendant's deposition testimony is believed then it necessarily means that he knowingly violated the law when he provided prosecutors false information about the circumstances of plaintiff's arrest. (Sup Dep., Ex. E; Arrest Rep., Ex. H; Compl. Rep., Ex I; Crim. Compl., Ex. D). In either instance, these material factual disputes foreclose the qualified immunity determination at this stage. This case presents too many disputes of material fact to warrant a finding that defendant is entitled to qualified immunity at

this stage. <u>See</u> <u>Lee</u>, 410 F.Supp2d at 225 ("This is a classic example of a case in which qualified immunity cannot be given to the officer defendants because there are too many disputes about what actually happened"). Accordingly, defendant's motion must be denied. [4]

## **<u>CONCLUSION</u>**

For all of the foregoing reasons, it is respectfully submitted that defendants' motion for summary judgment pursuant to Rule 56 should be denied as to plaintiff's false arrest and fair trial claims and that this Court should grant such other and further relief as it deems just and proper.

Dated: New York, New York
        February 1, 2013

Respectfully submitted,

COHEN & FITCH LLP

By: _____/S_____
        GERALD M. COHEN
        JOSHUA P. FITCH
        COHEN & FITCH LLP
        Attorneys for Plaintiff
        233 Broadway, Suite 1800
        New York, N.Y. 10279
        (212) 374-9115
        gcohen@cohenfitch.com
        jfitch@cohenfitch.com

---

[4] Plaintiff does not oppose defendants' motion regarding the municipal liability claim, which concededly must be dismissed.

23