UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DEVAWNE DOWLING,

          Plaintiff,

      -against-

THE CITY OF NEW YORK, POLICE OFFICER
LUKE GASQUEZ, Shield No. 2897, Individually
and in his Official Capacity and P.O.'s "John Does"
#1-10. Individually and in their Official Capacity
(the name John Doe being fictitious as the true
names are presently unknown),

          Defendants.
------------------------------------------------------------X

**MEMORANDUM & ORDER**

**11-CV-4954 (NGG) (RML)**

NICHOLAS G. GARAUFIS, United States District Judge.

    Plaintiff Devawne Dowling brings this action under 42 U.S.C. § 1983 against the New York City Police Department and various police officers for claimed violation of his rights under the U.S. Constitution, including false arrest and denial of his right to a fair trial. The suit stems from an incident in which Plaintiff was arrested for and charged with obstructing government administration. Defendants seek summary judgment on all claims. For the reasons explained below, their motion is DENIED.

**I.    BACKGROUND**

    **A.  Facts**

    Many facts are not in dispute. On Saturday, September 17, 2011, Plaintiff, along with his brother Deandre and several others, assembled at their friend's house to watch a boxing match. (Pl. Mem. in Opp'n (Dkt. 21) at 2.) At around 10:30 p.m., Plaintiff, Deandre, and friends Andre Delahunt and Orlando Mendez decided to go to a liquor store to get provisions for the party. (Id.; Pl. Decl. in Opp'n, Ex. A, Devawne Dowling Dep. (Dkt. 20) at 37:12-20, 45:10-15

("Dowling Dep.").) Plaintiff was about to make his purchase when his friend informed him that the police were searching his brother. (Pl. Mem. in Opp'n at 2.)

Plaintiff exited the liquor store to find that, indeed, his brother was being searched. (Id. at 3.) According to police, his brother had been caught urinating on the sidewalk, precipitating the stop by two police officers. Then a second set of police officers, Luke Gasquez and Marianna Gentile, pulled up in a van. They exited the van and were there when Plaintiff arrived on the scene. (Pl. Mem. in Opp'n at 5.) Concerned for his brother, Plaintiff began to walk towards where the police were. (Id. at 3.)

Plaintiff states that he approached Officer Gasquez, who was not taking part in the search, but standing approximately ten feet away from the search. (Id.) Although there is some dispute as to the exact language used, both sides agree that Plaintiff asked why the police were searching his brother. (Pl. Resp. to Def. Rule 56.1 Stmt. (Dkt. 23) ¶ 21.) Officer Gasquez yelled at Plaintiff to back up. Plaintiff stopped, approximately two to three feet from Office Gasquez, and said he was not approaching. (Pl. Resp. to Def. Rule 56.1 Stmt. ¶¶ 25, 28.) Unsatisfied with this answer, Officer Gasquez told him to back up again. (Dowling Dep. at 40:19-24.) Plaintiff stayed put and gave the same response. (Id.) Officer Gasquez then pushed Plaintiff back and instructed another officer to arrest him. (Id. at 40:24-25.) Officers also arrested Deandre Dowling and Orlando Mendez, the latter of whom had come up to ask why Plaintiff was being arrested. (Pl. Mem. in Opp'n at 3.) During this time, Plaintiff did not try to talk to his brother and remained about ten feet away from his brother. (Dowling Dep. at 50:7-13.)

The accounts of Plaintiff and Defendants diverge when they discuss this confrontation. Officer Gasquez contends that Plaintiff was approximately a foot away from him, and that several other men were with Plaintiff. (Def. Rule 56.1 Stmt. (Dkt. 16) ¶¶ 19-20.) Officer

2

Gasquez felt "enclosed." (Gasquez Dep., Ex. D to Def. Decl. in Supp. at 39:22 ("Gasquez Dep.").) When he told the group to back up, they all stepped back except for Plaintiff. (Id. at 40.) He states that Plaintiff attempted to block him or body check him and walk past him and that these actions were the basis for Plaintiff's arrest. (Pl. Mem. in Opp'n at 6); (Gasquez Dep. at 46-47, 60:6-7) ("He kept trying to walk passed [sic] me . . . He flailed his arms at me . . . . He's trying to swipe at me and check me.") Officer Gasquez states that, at some point, Plaintiff was in between him and Deandre Dowling. (Id. at 47:9-12). But, it appears from his testimony that Plaintiff was not in between Deandre and the officers who were searching him: "at this point they were putting him in handcuffs so they're a little off to the side. So it would be Devawne, me, Deandre, and directly behind Deandre they were placing him in handcuffs." (Id. at 48:15-19.)

Officer Gasquez's partner at the time of the stop, Officer Gentile, states that Plaintiff was three feet away from Officer Gasquez. (Gentile Dep., Ex. C to Pl. Mot. in Op'n, at 27:12 ("Gentile Dep.").) She describes Plaintiff as "flaring [sic] his arms up and down," "being disorderly," and cursing at her. (Id. at 35:16-18, 36:9-10.) She confirms that the actions described above were the extent of his behavior, (Id. at 37:2.).

No testimony has been offered regarding the names of the two officers who originally stopped Deandre Dowling. (Gasquez Dep. at 35:16-25, 36:2 (stating that two male officers originally stopped Devawne Dowling but that he does not know their names or what precinct they were from); Gentile Dep. at 27:9-22 (stating she does not know officers' names or what precinct they were from).) Plaintiff does not know the identity of the officer that arrested him, only that it was not Officer Gasquez or Officer Gentile. (Dowling Dep. at 49:1-13.)

Officer Gasquez believed that the two officers who had first arrived were issuing a summons to Deandre Dowling for public urination. (Gasquez Dep. at 51:12-14.) He assumed Deandre Dowling was arrested because he did not produce identification. (Id. at 51:7-9, 22-25.) Officer Gasquez himself did not then issue a summons to Deandre Dowling, nor did Officer Gasquez place him under arrest. However, Officer Gasquez transported Deandre Dowling in the van with Plaintiff and Mr. Mendez because there was room in the van. (Id. at 52:10-11.)

Officers Gasquez and Gentile transported the three men to the 115th Precinct. Deandre Dowling produced a school identification card. Officer Gasquez issued a summons to Deandre Dowling and then released him. (Id. at 54: 7-11.) Police also released Mr. Mendez. (Pl. Mem. in Opp'n at 3.) Based on Officer Gasquez's supporting deposition, prosecutors decided to charge Plaintiff with Second Degree Obstruction of Governmental Administration. (Id. at 3-4.) Plaintiff was in custody for approximately twenty-four hours before his case was adjourned in contemplation of dismissal. (Id. at 4.)

Officer Gasquez's initial sworn statement attached to the criminal complaint states that Plaintiff interfered with Officer Gasquez when the officer was issuing a summons. (Pl. Mem. in Opp'n at 6.) Officer Gasquez filled out a form declaration for disorderly conduct and obstructing government administration under the heading "obstructing government administration." This form gave him the option to circle "I/Another Public Servant" in the statement describing what action a defendant was obstructing. (Supp. Decl., Ex. D to Pl. Dec. in Opp'n.) Officer Gasquez chose "I." (Id.) The form then lists some common actions, and offers a write-in area in which Officer Gasquez wrote "issue summons." (Id.) On a menu of actions, he chose "Place him/her self between:" and wrote in "arresting officer and [blank]." (Id.) He also chose "other" and filled in "yell and flail arms @ officer repeatedly" and confirmed that Plaintiff did not resist

4

arrest. (Id.) Plaintiff's arrest record states that he "repeatedly interfered with [arresting officer] while [arresting officer] attempted to issue [blank] a summons for urinating in public. Deft did step in between officer repeatedly yelling at officer and flailing arms refusing to step back numerous times." (Arrest R., Ex. E to Def. Decl. in Supp.)

**B. Procedural History**

Plaintiff filed his complaint against the City, Officer Gasquez, and other John Does on October 12, 2011. (Compl. (Dkt. 1).) Under 42 U.S.C. § 1983, Plaintiff alleged deprivation of his Fourth Amendment rights, false arrest, and denial of his right to fair trial. (Id. at 4-6.) He also made a claim against the City under Monnell v. Department of Social Services, 436 U.S. 658 (1976). (See id. at 6-7.)

Defendants requested a pre-motion conference on November 8, 2012. (Def. Ltr. (Dkt. 11).) Plaintiff filed his response in opposition to the request for a pre-motion conference on November 13, 2012. (Resp. in Opp'n (Dkt. 14).) In that response, Plaintiff agreed to withdraw his municipal liability claim. (Id. at 4 n.4.) On November 30, 2012, the court granted leave to the Defendants to file for summary judgment. (Nov. 30, 2012, Min. Entry.) On February 8, 2012, Defendants moved for summary judgment. (Mot. for Summ. J. (Dkt. 15).)

**III. SUMMARY JUDGMENT**

**A. Standard**

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The burden of making this showing rests upon the party moving for summary judgment. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). "[T]he

court must draw all reasonable inferences in favor of the nonmoving party." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149 (2000).

A fact is material if its existence or non-existence "might affect the outcome of the suit under the governing law," and an issue of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Only "specific facts" grounded in testimony or other admissible evidence create a genuine issue. Id. "[M]ere allegations or denials" of the adverse party's pleadings, id., and "the presentation of assertions that are conclusory," Patterson v. Cnty. of Onieda, N.Y., 375 F.3d 206, 219 (2d Cir. 2004), or "conjecture[] or speculation" from the non-movant, Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996), do not.

**B. Discussion**

Defendants move for summary judgment on Plaintiff's claims for false arrest and the violation of his right to fair trial. Officer Gasquez also asserts a defense of qualified immunity.

*1. False Arrest*

A section 1983 action for false arrest is valid if the arrest was made without probable cause. See Weyant v. Okst, 101 F.3d 845, 852 (1996). The Second Circuit assigns the burden of proof as to the existence of probable cause according to state law. Davis v. Rodriguez, 364 F.3d 424, 433 (2d Cir. 2004). Under New York law, an arrest made without a warrant is presumed to be unlawful unless the officer can prove that he or she has probable cause for the arrest. Jenkins v. City of New York, 478 F.3d 76, 88 (2d Cir. 2007); see also Bernard v. U.S., 25 F.3d 98, 102 (2d Cir. 1994) (elements of false arrest under New York law). "[S]ummary judgment dismissing a plaintiff's false arrest claim is appropriate if the undisputed facts indicate the arresting officer's probable cause determination was objectively reasonable." Jenkins, 478 F.3d

at 88 (citation omitted). In deciding whether probable cause exists, courts consider the totality of the circumstances surrounding the arrest from the point of view of a reasonable officer. Illinois v. Gates, 462 U.S. 213, 230-31 (1983). In general "[p]robable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010) (citations omitted).

As Plaintiff was arrested for Obstructing Government Administration in the Second Degree, the court begins by considering whether a reasonable officer would have had probable cause to arrest Plaintiff for that offense.

The relevant portion of the statute reads:

> A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act . . . .

N.Y. Penal Law § 195.05 (McKinney 2010). To have probable cause to arrest Plaintiff, Officer Gasquez would have to reasonably believe that Plaintiff had the intent to prevent him or other officers from searching his brother, or issuing a summons to or arresting his brother. The Officer would also have to believe that Plaintiff used physical force or intimidation, or by committing some independently unlawful act.

    *a. Intent to Obstruct*

The New York courts understand obstructing government administration to involve intent "to prevent the public servant from engaging in a specific official function." In re Armell N., 28 Misc. 3d 528, 531 (N.Y. Fam. Ct. 2010) (citation omitted). In this case, Officer Gasquez would

have had to have probable cause to believe that Plaintiff was not merely trying to question officers about why they were searching his brother, or expressing his annoyance, but that his intent was to interfere in the search, and ultimately the arrest, of Deandre Dowling. Officer Gasquez would have to base his assessment of Plaintiff's intent on Plaintiff's words and actions demonstrating that intent.

Although the facts that Defendants assert suggest that Plaintiff did have the requisite intent, Plaintiff's account would not require such a finding. According to his version of events, he stopped approaching Officer Gasquez when told to back up, acting in a way that suggests that he did not have intent to prevent officers from searching his brother. (Devawne Dowling Dep. 40:19-24); see Lee v. McCue, 410 F.Supp. 2d 221, 226 (S.D.N.Y. 2006) ("If we accept plaintiff's version of events (and I have no choice in the matter), then [he] did nothing to provoke his arrest.").

### b. Obstruction

Failing to obey a police order, in and of itself, does not constitute a circumstance that gives rise to probable cause for an arrest for obstructing government administration. See Jackson v. City of New York, No. 11-CV-2925 (WFJ), 2013 WL 1621994, at *6 (E.D.N.Y. April 16, 2013) (concluding that "[d]efendants fail to cite any cases where probable cause to arrest for obstructing government administration can be predicated solely on failure to comply with a police order," and that probable cause did not exist for arresting woman who refused to open her car door). When failing to obey the order creates some other hazard or interference, it can rise to the level of obstruction necessary for obstructing government administration. See, e.g., Wilder v. Vill. of Amityville, 288 F. Supp. 2d 341 (E.D.N.Y. 2003) (failing to leave an area in which a tree was about to be cut down); Lennon v. Miller, 66 F.3d 416, 424 (1995) (defendant failed to

leave her soon-to-be-ex-husband's car and attempted to drive away with it). So too can disobedience of an order combined with another unlawful act. Berger v. Schmitt, 02-CV-0155E (SR), 2003 WL 21383007 at *3 (W.D.N.Y. April 18, 2003) (arrest proper when trespasser refused to leave premises because trespass was independently unlawful act that kept officers from performing their duties); Linehan v. State, 608 N.Y.S. 2d 294, 294 (N.Y. App. Div. 1994) (probable cause for arrest exists because plaintiffs resisted efforts of court officers to keep them away and restrain them "in an area where a disturbance was taking place").

Plaintiff does not dispute the fact that he did not back up when told to do so, and that he continued to disobey the command when Officer Gasquez repeated it. Both sides also agree that Plaintiff did not physically prevent the search of, arrest of, or issuance of a summons to Deandre Dowling. Since failing to obey the order was itself not enough to create probable cause to arrest Plaintiff, Officer Gasquez would also have had to believe that Plaintiff made at least an attempt to physically interfere with the other officers' actions in searching and arresting his brother.

### c. *Physical Force or Intimidation*

New York courts have long read "physical" as modifying "interference" in the text of the statute. People v. Covington, 18 A.D.3d 65, 66, (N.Y. App. Div. 2005) ("[W]ords alone do not satisfy the requirements of the statute."); People v. Case, 42 N.Y.2d 98, 101 (N.Y. Ct. App. 1977). As a result, "[w]here the fact of physical interference with an official function is clear as a matter of law, an officer's decision to arrest an individual for obstructing governmental administration is generally reasonable." Decker v. Campus, 981 F. Supp. 851, 857 (S.D.N.Y. 1997) (citation omitted); see also In re Garrick B., 30 A.D.3d 217, 218 (N.Y. App. Div. 2006) ("Appellant interrupted a police interview of a complainant by screaming obscenities at the police, and then refused to comply with the officers' directives to leave, physically menaced an

officer, screamed, cursed, flailed his arms and struggled with the officers."); People v. Tarver, 188 A.D.2d 938, 938 (N.Y. App. Div. 1992) (finding physical interference because defendant "cock[ed] his arm as if to strike" officer and resisted arrest).

Cases in which disobeying a police order was sufficient to support an arrest for obstructing government administration tend to involve some sort of physical action along with noncompliance with a direct police order. In People v. Godbold, defendant and his friend had been stopped for drunk driving. 207 A.D.2d 1008, 1008 (N.Y. App. Div. 1994). While one officer was administering a field sobriety test to the friend, the defendant attempted to interfere. Id. Another officer, providing security to the first, told him to stop, but he pushed past the officer. Id. The Appellate Division considered this conduct sufficient for obstructing government administration. Id. In another drunk driving case, the defendant wanted to know why police were stopping his friend. People v. Baltes, 75 A.D.3d 656, 657 (N.Y. App. Div. 2010). He approached police and was yelling and upset, interrupting a field sobriety test. See id. at 657-58. Police told him to move away, and, when he ignored their instruction, tried to move him. Id. At that point, the defendant struck one of the officers and was arrested. Id. This too was obstructing government administration. Id. at 659.

There are some limited exceptions to the general rule requiring physical interference. If a defendant's attempts to talk to a third person interfere with police action, these attempts can also constitute obstructing government administration. Most of these cases involve warnings designed to interfere with imminent arrests that were made directly to the people targeted for arrest. See Covington, 18 A.D.3d at 66-67; Matter of Davan L., 91 N.Y.2d 88 (1997); People v. Marte, 30 Misc. 3d 1205(A) (N.Y. Crim. Crt. 2010); People v. Knight, 30 Misc. 3d 235, 236 (N.Y. Crim. Ct. 2010).

Key questions of fact to be resolved in this situation include whether Plaintiff placed himself physically in between the police and the other person, People v. Yarborough, 19 Misc. 3d 520 (N.Y. Sup. Ct. 2008), and whether Plaintiff remained calm or became disorderly enough to interfere with police action, Diodati v. City of Little Falls, No. 04-CV-446 (FJS), 2007 WL 189130 (N.D.N.Y. Jan. 22, 2007) (denying summary judgment in a similar section 1983 case because there was a question as to whether the plaintiff had remained calm, or became disorderly and interfered with an arrest).

According to Plaintiff's version of the facts, police would not have probable cause to believe that he was obstructing government administration. Plaintiff did not obey the order to back up, but he stood still and never attempted to push past Officer Gasquez. He assured the Officer that he was not approaching. (Dowling Dep. at 40:19-24.) And he never spoke to his brother during the police stop. (Id. at 50:7-11.) At trial, Defendants may prevail in their claims that Plaintiff's conduct was so disorderly that it did interfere with the stop. See Diodati, 2007 WL 189130 at *3. But viewed at this stage, the facts remain in dispute. If taken in the light most favorable to the plaintiff, the facts surrounding the arrest do not meet the standard for probable cause for obstructing government administration. Thus, the court will deny Defendants' motion for summary judgment on the false arrest claim.

### 2. Fair Trial

A police officer violates the right to fair trial if it is proven that he or she "create[d] false information likely to influence a jury's decision and forward[ed] that information to prosecutors." Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997). The officer is liable if the resulting deprivation of liberty is not "too remote a consequence" of the act of creating the false information. Powers v. Coe, 728 F.2d 97, 105-06 (1984) (quoting Martinez v.

11

California, 444 U.S. 277, 279 (1980)); see also Zahrey v. Coffey, 221 F.3d 342, 350 (2d Cir. 2000).

Police held Plaintiff for twenty-four hours before a judge released him with an adjournment in contemplation of dismissal. Defendants argue that his release before trial voids his claim. In support of this argument, Defendants cite a number of cases having to do with malicious prosecution. (Mem. in Supp. Summ. J. (Dkt. 18) at 16-17.)

Although they may seem similar in some respects, false arrest and malicious prosecution are separate causes of action under the law in this circuit. See generally Ricciuti 124 F.3d 123 (2d Cir. 1997) (treating false arrest and malicious prosecution claims separately under separate standards). A prosecution may be required for a claim of malicious prosecution, but "[n]o precedent exists, in this circuit or otherwise, for dismissing a § 1983 claim for deprivation of the right to a fair trial in light of a plaintiff's acceptance of an ACD." Keller v. Sobolewski, No. 10-CV-5198 (FB), 2012 WL 4863228, at *4 (E.D.N.Y. Oct. 12, 2012) Instead, "[t]he limiting factor appears to be not whether the plaintiff went to trial but whether the falsification caused material harm." Schiller v. City of New York (multiple numbers) 2008 WL 200021, at *10 (S.D.N.Y. Jan. 23, 2008).

The plaintiff in Keller, cited above, spent thirty-five hours in jail. Plaintiff's twenty-four hours in jail, culminating, like Keller's, in adjournment in contemplation of dismissal, is similar enough to warrant a finding that he was deprived of his liberty. See Keller, 2012 WL 483228 at *5. Given that the time that Plaintiff was held is sufficient, the next question is whether his being held can be attributed to wrongdoing on the part of Officer Gasquez.

The affidavit that Officer Gasquez filled out immediately after the arrest suggests that Plaintiff interfered with Officer Gasquez when Officer Gasquez was attempting to issue a

summons to an individual. (Supp. Decl., Ex. D to Pl. Decl. in Opp'n.) Plaintiff's arrest record has a slightly different account—he was in between the arresting officer and Deandre Dowling. (Arrest Rec., Ex. E to Def. Decl. in Supp.) The document forwarded to prosecutors, the supporting declaration, suggests both that Plaintiff was in between Officer Gasquez and Deandre Dowling and that Officer Gasquez was personally issuing a summons to Deandre Dowling during that time. (Supp. Decl., Ex. D to Pl. Decl. in Opp'n.) This is important because it makes out a very clear case for obstructing government administration: that Plaintiff was essentially in between an officer issuing a summons and the person he was issuing the summons to. If true, these facts would make this case almost identical to the drunk driving cases cited above. Baltes, 75 A.D.3d at 657; Godbold, 207 A.D.2d at 1008. They would tend to increase Plaintiff's likelihood of conviction on a charge of obstructing government administration.

Because the court is faced with a summary judgment motion, it must construe the facts in the light most favorable to the non-moving party. See Anderson 477 U.S. at 255. In Plaintiff's telling, Plaintiff made no threatening gestures toward the officers, nor did he approach closer than two to three feet. Officer Gentile's testimony largely corroborates this account. Officer Gasquez himself clarified in his deposition testimony that Plaintiff was between him and Deandre Dowling at the point at which a third officer was putting Deandre Dowling in handcuffs. (Gasquez Dep. at 48:15-19.) On the facts most favorable to Plaintiff, Officer Gasquez's report was at best inaccurate in a way likely to increase Plaintiff's chances of conviction. Plaintiff has identified enough disputed evidence to allow his claim to be decided by a jury.

### 3. Qualified Immunity

Even if Officer Gasquez violated Plaintiff's civil rights, he may still avoid personal liability under the doctrine of qualified immunity. Qualified immunity protects officials performing discretionary functions from liability for civil damages as long as their conduct does not violate a clearly established right. Taravella v. Town of Wolcott, 599 F.3d 129, 133 (2d Cir. 2010). Courts use a two-part test to determine whether immunity is appropriate: (1) whether the facts demonstrate a violation of a right, and (2) whether the right at issue was clearly established at the time of the incident. Id. To be covered by this doctrine, officers would merely have to act "reasonably under settled law in the circumstances." Hunter v. Bryant, 502 U.S. 224, 228 (1991). The Second Circuit has described this standard as "arguable probable cause," which exists when a reasonable officer "in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law." Cerrone v. Brown, 246 F.3d 194, 202-03 (2d Cir. 2001) (quoting Lee v. Sandberg, 136 F.3d 94, 102 (2d Cir.1997) (emphasis in original)).

If there is no serious dispute as to the facts, the court should decide issues of qualified immunity. Lennon, 66 F.3d at 421. But "if any reasonable trier of fact could find that the defendants' actions were objectively unreasonable, then the defendants are not entitled to summary judgment." Id. at 420-21. Because the rights at issue in this case are clearly established, the inquiry will focus on whether the facts, taken in the light most favorable to Plaintiff, could demonstrate that Officer Gasquez acted unreasonably.

#### a. The False Arrest Claim

"'Arguable' probable cause should not be misunderstood to mean 'almost' probable cause." Jenkins, 478 F.3d at 87. The New York cases are clear that mere words, without more,

14

do not satisfy the standard for obstructing governmental administration. This is not a new interpretation of the law. See Jackson, 2013 WL 1621994, at *6; In re Armell N., 28 Misc.3d at 534; Case, 42 N.Y.2d at 100–01. Thus the reasonableness of Officer Gasquez's belief that Plaintiff was obstructing government administration turns on the reasonableness of his belief that Plaintiff was doing something other than complaining, swearing, and otherwise voicing his disagreement. See Weyant, 101 F.3d at 858.

If Plaintiff's testimony suggested the appearance of physical interference, or attempted interference, with his brother's search and arrest, then arguable probable cause for Plaintiff's arrest would exist. Decker, 981 F. Supp. at 858 (section 1983 plaintiff's own testimony showed he interfered with rescue workers and tried to break away from officer restraining him). But Plaintiff's *and* Officer Gentile's testimony that Plaintiff did not approach closer than three feet or make a motion to hit or move past an officer suggest that a trier of fact might have a different view. (Dowling Dep. at 52:1-25; Gentile Dep. at 37:2 (responding "that's pretty much it" when asked if Plaintiff did anything more than yell and flail his arms)); See Lee, 410 F. Supp. 2d at 226 (refusing summary judgment because plaintiff claimed "he did not bump Officer Manganiello, verbally interfere with Mann's questioning, or resist being handcuffed and arrested."); see also McClellan v. Smith, 493 F.3d 137, 147 (2d Cir. 2006) (district court cannot pre-judge facts when considering discrepancies between plaintiff's and defendant officer's version of events); Curry v. City of Syracuse, 316 F.3d 324 (2003) (discrepancies between plaintiff's and officer's depositions suggest issue of fact related to qualified immunity that requires jury determination); Diodati, 2007 WL 189130 at *4 ("qualified immunity cannot be determined as a matter of law when the reasonableness of officers' beliefs depends on whether

one believes the officers' version of disputed facts."). Because these facts are in dispute, the court cannot grant qualified immunity to Officer Gasquez on summary judgment.

        *b. The Fair Trial Claim*

The records created on Plaintiff's arrest, and forwarded to prosecutors, vary from the deposition testimony of Plaintiff and the two officers. The details about Plaintiff yelling and flailing his arms are consistent with Officers Gasquez's and Gentile's depositions. It would be reasonable for Officer Gasquez to describe events as he perceived them, even if his perception was erroneous. However, Officer Gasquez would have known whether or not he was trying to issue the summons to Deandre Dowling himself. If he was not, there would be no reason for him to inform prosecutors, through his reports, that he was the person issuing the summons at the time of Plaintiff's alleged interference. Although there are few cases directly on point, if Officer Gasquez knowingly forwarded false information, then Ricciuti appears to preclude a claim of qualified immunity. 124 F.3d at 130. Because this issue involves a determination of disputed facts, the court cannot grant qualified immunity on summary judgment and the issue must go to jury.

## V. CONCLUSION

For the reasons above, Defendants' motion for summary judgment is DENIED.

SO ORDERED.

                                                                                             s/Nicholas G. Garaufis

Dated: Brooklyn, New York                        NICHOLAS G. GARAUFIS
      September 30, 2013                           United States District Judge